## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

MISSY STODDARD,
    *Plaintiff*,

    v.                             No. 3:23-cv-01293 (JAM)

CITY OF HARTFORD *et al.*,
    *Defendants*.

### ORDER GRANTING CITY OF HARTFORD'S MOTION TO DISMISS

Missy Stoddard filed suit against the City of Hartford as well as various Hartford police officials including Sergeant Christoper Hunyadi, Detective Jarrett Hunter, and Officers Adam Demaine, Anthony Gauadino, and Clide Patino. She claims they violated her rights under the U.S. Constitution and Connecticut Constitution, as well as state law.

The City has now moved to dismiss Stoddard's claims against it. Because Stoddard does not allege plausible grounds for relief against the City, I will grant the motion to dismiss.

### BACKGROUND

I take the facts as stated in Stoddard's complaint as true for the purposes of this ruling. Stoddard, a Massachusetts resident, claims she was held against her will in a Hartford apartment from September 3 to September 6, 2021.[1] During this time, she was repeatedly physically and sexually assaulted by multiple assailants.[2]

After escaping the apartment, she walked to the Hartford Police Department Substation but was told by Officer Demaine to go to Police Headquarters.[3] Officer Gauadino, who was

---

[1] Doc. #1-2 at 1 (¶ 1). Stoddard's complaint states that she was held against her will from "September 3, 2021 to September 6, 2023." *Ibid.* But she later revised the date range to September 3 to September 6, 2021 in her response to the motion to dismiss and her counsel confirmed at oral argument that this three-day range was correct. Doc. #28 at 2.
[2] Doc. #1-2 at 1 (¶ 1); *see id.* at 2 (¶ 5).
[3] *Id.* at 2 (¶¶ 4–6).

present at the Substation, did not assist Stoddard.[4] Stoddard proceeded to a nearby restaurant from where she called 911.[5] She was subsequently transported to Hartford Hospital.[6]

Officer Patino, having been assigned to Stoddard's case, met her at the hospital.[7] While Stoddard was being given a physical examination, Officer Patino activated his body camera and recorded the evaluation.[8]

Officer Patino notified his supervisor, Sergeant Hunyadi, that Stoddard had been sexually assaulted.[9] Sergeant Hunyadi did not ensure the Special Investigations Division was notified about Stoddard's case.[10] Nor did Sergeant Hunyadi assign additional resources to the investigation to preserve the crime scene, canvas for suspects, identify witnesses, or provide Stoddard with support.[11]

Detective Jarrett was assigned to the investigation on September 9 and first contacted Stoddard on September 21.[12] Though an interview with Stoddard was scheduled for October 8, Detective Jarrett did not attend.[13]

On September 5, 2023, Stoddard initiated this suit against the City of Hartford and the five individual defendants in Connecticut Superior Court.[14] She seeks $15,000 or more in damages for violations of her rights under the U.S. Constitution and Sections 7, 9, and 10 of

---

[4] *Id.* at 2 (¶ 7).
[5] *Id.* at 3 (¶ 8).
[6] *Id.* at 3 (¶ 9).
[7] *Ibid.*
[8] *Ibid.*
[9] *Id.* at 3 (¶¶ 10–11).
[10] *Id.* at 3–4 (¶ 12).
[11] *Ibid.*
[12] *Id.* at 4 (¶ 13).
[13] *Ibid.*
[14] Docs. #1-1, #1-3.

Article First of the Connecticut Constitution, as well as common law claims of negligence and intentional and negligent infliction of emotional distress.[15]

The defendants removed the action to this Court on October 4.[16] The City has moved to dismiss Stoddard's claims for municipal liability.[17]

## DISCUSSION

The standard that governs a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) is well established. A complaint may not survive unless it alleges facts that taken as true give rise to plausible grounds to sustain a plaintiff's claims for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 338 n.7 (2d Cir. 2024).[18]

This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Court may also consider any documents attached as exhibits to, incorporated by reference in, or integral to the complaint. *See Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 187 n.1 (2d Cir. 2020).

### Monell *liability*

Stoddard alleges that the defendants deprived her "of the rights, privileges and immunities secured to her by" the U.S. Constitution.[19] Pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a municipality is not liable in *respondeat superior* for the unconstitutional actions of its employees. Instead, *Monell* allows for municipal liability only

---

[15] Doc. #1-2 at 2 (¶ 3), 7–15.
[16] Doc. #1.
[17] Doc. #23.
[18] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[19] Doc. #1-2 at 2 (¶ 3).

if an officer's violation of a plaintiff's constitutional rights was caused by a municipal policy, practice, or custom, or if it was caused by a municipality's deliberate indifference and inaction in light of a history of prior similar constitutional deprivations by municipal officers. *See Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018).

Stoddard claims that these "deprivations [were] in violation of Title 42 of the United States Code, Sections 1981, 1983 and 1988."[20] As an initial matter, sections 1981 and 1988 do not create independent causes of action; rather, violations of these sections are only enforceable through a cause of action pursuant to section 1983. *See Monell*, 436 U.S. at 701 n.66 (§ 1988); *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (§ 1981).

Under *Monell*, "a municipality can face suit under section 1983 only if its 'failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.'" *Hanks v. City of Syracuse*, 2023 WL 8889764, at *4 (2d Cir. 2023) (quoting *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)). Put simply, "a *Monell* claim cannot succeed without an independent constitutional violation." *Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022).

But Stoddard does not allege what, if any, independent constitutional violation occurred. Stoddard's claim that she was "deprived . . . of the rights, privileges and immunities secured to her by the United States Constitution" merely reiterates the section 1983 standard.[21] *See* 42 U.S.C. § 1983 (creating a cause of action when a state official, acting "under color of" state law, deprives a person "of any rights, privileges or immunities secured by the Constitution"); *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)) ("Through § 1983, Congress sought 'to give a remedy to parties deprived of constitutional rights, privileges

---

[20] *Ibid.*
[21] *Ibid.*

and immunities by an official's abuse of his position.'"). And vague and conclusory allegations of a constitutional violation cannot survive a motion to dismiss. *See Swinton v. Livingston Cnty.*, 2023 WL 2317838, at *1 (2d Cir. 2023); *Johnson v. N.Y.C. Police Dep't*, 651 F. App'x 58, 60–61 (2d Cir. 2016).

Nor do the defendants' alleged failures "to serve and protect" and "to investigate the crimes infl[i]cted upon" Stoddard implicate a constitutional right.[22] "[C]ourts have consistently declined to find that crime victims . . . possess a constitutional right to a police investigation into those crimes." *Harris v. City of New York*, 2023 WL 6542019, at *2 (S.D.N.Y. 2023) (collecting cases). "This is because 'the duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion.'" *Westry v. City of Waterbury*, 2023 WL 3259878, at *5 (D. Conn. 2023) (quoting *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010) (reaching that conclusion even when the plaintiff made claims of a "'deliberately indifferent' and deficient police investigation")). Such "discretion precludes any legitimate claim of entitlement to a police investigation." *Ibid* (quoting *Harrington*, 607 F.3d at 35). Accordingly, Stoddard cannot predicate a constitutional violation on the defendants' alleged failure to investigate the criminal acts perpetrated against her.[23]

The closest Stoddard comes to establishing the City's liability under section 1983 is in claiming that Officer Patino "activated his body camera and recorded her intimate and intrusive physical evaluation" at Hartford hospital.[24] The Second Circuit has clearly stated "that there is a right to privacy in one's unclothed or partially unclothed body" and that right is violated when a

---

[22] *Id.* at 4 (¶ 14).

[23] Even if the officers' alleged failure to investigate was a cognizable constitutional violation, Stoddard's section 1983 claim would still fail because, for the reasons stated *infra*, she has not alleged that the constitutional violation—which, to be clear, is not cognizable for the reasons I previously outlined—resulted from the City's policy or custom. *See, e.g.*, *Jenkins v. City of Hartford*, 2024 WL 1157342, at *4 (D. Conn. 2024).

[24] Doc. #1-2 at 3 (¶ 9).

police "officer manipulates the circumstances . . . to videotape or otherwise to record that person's unclothed or partially unclothed body without his or her consent where . . . there is no conceivable investigative or otherwise proper law-enforcement interest advanced by such a viewing." *Poe v. Leonard*, 282 F.3d 123, 138–39 (2d Cir. 2002). Here, Stoddard has alleged that Officer Patino violated her right to privacy by turning on his body camera and recording her medical examination. *See Scott v. City of New York*, 2020 WL 208915, at *11 (E.D.N.Y. 2020) (reaching the same conclusion when an officer was "shining his flashlight towards, and staring at, [plaintiff's] bare breasts").

But even if Stoddard has stated a claim for violation of her right to privacy, she has failed to allege that this violation was the result of a municipal policy or custom. To prevail on a custom-or-policy claim, "a plaintiff must identify either an 'express rule or regulation,' a practice that 'was so persistent or widespread as to [carry] the force of law,' or misconduct of 'subordinate employees' that 'was so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Swinton*, 2023 WL 2317838, at *1 (quoting *Littlejohn v. City of New York,* 795 F.3d 297, 315 (2d Cir. 2015)). Stoddard does not do that. She points to no municipal policy, practice, or custom that caused her purported injury, and thus her allegations fall short of pleading a plausible *Monell* claim. *See Doe v. Avon Old Farms School, Inc.*, 2023 WL 2742330, at *11 (D. Conn. 2023). In sum, for the reasons set forth above, I will dismiss Stoddard's federal claims under 42 U.S.C. §§ 1981, 1983 and 1988 against the City of Hartford.

### State law claims

Stoddard also brings state law claims against the City. Defendants removed this action to this Court under "federal question" jurisdiction.[25] *See* 28 U.S.C. § 1331. Though I have

---

[25] Doc. #1 at 2 (¶¶ 3–5).

dismissed Stoddard's claims against the City that arose under federal law, I conclude that there is an independent basis for jurisdiction over Stoddard's state law claims based on "diversity" jurisdiction. *See Lettieri v. Anti-Defamation League Found.*, 2023 WL 5152447, at *4 (S.D.N.Y. 2023).

Federal courts have diversity jurisdiction over claims that arise under state law if the parties are citizens of different States and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. At the time she filed the complaint, Stoddard was a citizen of Massachusetts and the defendants were citizens of Connecticut.[26] And based on my colloquy with Stoddard's counsel at oral argument, I am satisfied that the amount in controversy is greater than $75,000. Accordingly, this Court has diversity jurisdiction over the parties and my review of Stoddard's state law claims is proper.

Stoddard alleges that the City is liable for the intentional infliction of emotional distress by the individual defendant officers. But under Connecticut law, municipal governments may not be held liable for the intentional torts of their employees. Conn. Gen. Stat. § 52-557n(a)(2)(A).[27] It is well established that Connecticut's grant of governmental immunity extends to claims for intentional infliction of emotional distress. *See Pane v. City of Danbury*, 267 Conn. 669, 685–86, (2004), *overruled on other grounds by Grady v. Town of Somers*, 294 Conn. 324 (2009); *see also Larsen v. Berlin Bd. of Educ.*, 588 F. Supp. 3d 247, 263 (D. Conn. 2022). Accordingly, I will dismiss Stoddard's claim for intentional infliction of emotional distress against the City of Hartford.

---

[26] Docs. #32, #1-1, #1-3.
[27] The statute reads in relevant part: "[A] political subdivision of the state shall not be liable for damages to person or property caused by . . . [a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or willful misconduct." Conn. Gen. Stat. § 52-557n(a)(2)(A).

The City also seeks dismissal of Stoddard's negligence claims on governmental immunity grounds. Under Connecticut law, "municipalities are statutorily immune from negligence liability resulting from the discretionary acts of their employees, officers and agents." *Doe v. Petersen*, 279 Conn. 607, 609 (2006); *see* Conn. Gen. Stat. § 52-557n(a)(2)(B); *Pierce v. Town of Simsbury*, 2024 WL 665917, at *16 (D. Conn. 2024).[28] Liability will ensue for negligence arising out of a municipal officer's ministerial acts. *Petersen*, 279 Conn. at 615.

But Stoddard has not alleged the violation of a ministerial duty. Connecticut "courts consistently have held that to demonstrate the existence of a ministerial duty on the part of a municipality and its agents, a plaintiff ordinarily must point to some statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, by its clear language, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion." *Doe v. Town of Madison*, 340 Conn. 1, 31–32 (2021). "[T]he construction of any such provision, including a municipal rule or regulation, presents a question of law for the court." *Cole v. City of New Haven*, 337 Conn. 326, 338 (2020). And "as a general rule, police officers are protected by discretionary act immunity when they perform the typical functions of a police officer." *Borelli v. Renaldi*, 336 Conn. 1, 13 (2020).

Stoddard claims the officers did not follow regulations outlined in the Hartford Police Department Code of Conduct.[29] But far from "mandat[ing] a particular response to specific conditions," the Code of Conduct imposes nothing more than "general duties" on officers. *Northup v. Witkowski*, 332 Conn. 158, 169 (2019). Four of the cited regulations require officers

---

[28] The statute reads in relevant part: "[A] political subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Conn. Gen. Stat. § 52-557n(a)(2)(B).
[29] Doc. #1-2 at 7–8, 12–13.

to "make proper notifications,"[30] "complete reports[] in a timely manner,"[31] "identify, collect[,] or preserve evidence in a timely fashion,"[32] and "take appropriate action when necessary."[33] These duties "are typical functions of a police officer characterized by the exercise of judgment." *Smart v. Corbitt*, 126 Conn. App. 788, 801 (Conn. App. 2011).

Similarly, regulations that officers must "comply with any lawful orders,"[34] "perform[] assigned duties" in a manner that is not "careless or negligent,"[35] and refrain from engaging in acts that "undermine the good order, efficiency, and discipline"[36] of the police department "do not . . . prescribe the manner" in which officers should act and are therefore discretionary. *Silbertstein v. 54 Hillcrest Park Assocs., LLC*, 135 Conn. App. 262, 273 (Conn. App. 2012). In sum, none of the above regulations in the Hartford Police Department Code of Conduct create a ministerial duty.

Stoddard also claims the officers violated freestanding ministerial duties. First, she claims that the defendants "failed to provide medical and psychological care to" her.[37] But "the provision of emergency medical services to members of the public is a discretionary act." *Bost v.*

---

[30] Doc. #31-1 at 11 ("4.06. Failure of a supervisor to make proper notifications.").

[31] *Ibid.* ("4.07. Failure of a supervisor to complete reports, in a timely manner.").

[32] *Id.* at 13 ("5.13. Failure to properly identify, collect or preserve evidence in a timely fashion due to carelessness or neglect.").

[33] *Id.* at 16 ("6.08. Intentional failure to take appropriate action when necessary and/or failure to make a written report of same to appropriate Bureau, Division, or Commanding Officer at the conclusion of the employee's tour of duty unless specifically waived by the Commander.").

[34] *Id.* at 13 ("5.08. Negligent failure to comply with any lawful orders, procedures, directives or regulations; oral or written.").

[35] *Ibid.* ("5.14. Performing assigned duties or other official work in a careless or negligent manner or in disregard of prescribed procedures or established practices.").

[36] *Id.* at 5 ("1.00. Any violation of the rules and regulations, published orders, directives, memoranda, or any lawful order, or any act which lends to undermine the good order, efficiency and discipline of the Department, or which reflects discredit upon the Department or any member thereof, shall constitute conduct unbecoming an employee. This section will not be used when the employee's conduct is more specifically addressed by another section of the code.").

[37] Doc. #1-2 at 8, 13.

*Town of Hamden*, 2013 WL 5394318, at *12 (Conn. Super. Ct. 2013); *see Popow v. Town of Stratford*, 2010 WL 537752, at *6 (D. Conn. 2010).

Second, Stoddard alleges the defendants "failed to follow the rules and procedures of the City of Hartford Police Department [t]hat would have resulted in the capture of the person(s) who subjected [her] to physical and mental abuse."[38] Connecticut courts, however, "have consistently held that the police department's investigation of crimes and their decisions to make arrests for them are clearly a discretionary rather than a ministerial function." *Beaubien v. City of Middletown*, 2012 WL 3854060, at *3 (Conn. Super. Ct. 2012); *see Arias v. East Hartford*, 2021 WL 3268846, at *13 (D. Conn. 2021).

Third, Stoddard claims the defendants did not "treat [her] with dignity and respect."[39] But Stoddard does not cite any rule or ordinance that obligated defendants to behave towards her in a certain manner. *See Holloway v. Town of New Canaan*, 2019 WL 5172237, at *3 (Conn. Super. Ct. 2019) (citing *Violano v. Fernandez*, 280 Conn. 310, 323–24 (2006)). Accordingly, these duties were discretionary, not ministerial, and subject to governmental immunity.

But my analysis does not end there. Connecticut has long recognized "an exception to discretionary act immunity" that applies "when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm."[40] *Town of Madison*, 340 Conn. at 36. Connecticut courts employ a three-part test to determine if this "identifiable-person imminent harm exception" applies: There must be "(1) an

---

[38] *Ibid.*

[39] *Ibid.*

[40] There are three exceptions to governmental immunity for discretionary acts. *See Doe v. Town of Greenwich*, 422 F. Supp. 3d 528, 542 (D. Conn. 2019). But Stoddard only invokes the identifiable-person imminent harm exception. *See* Doc. #1-2 at 8 (alleging that as a result of individual defendants' negligence, plaintiff, "an identifiable victim" was subjected "to a risk of imminent harm"), 13 (same with negligent infliction of emotional distress claim). Accordingly, my analysis is confined to the identifiable-person imminent harm exception.

imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." *Ibid.*

Stoddard has not pled facts adequate to give rise to this exception because she does not allege the existence of an imminent harm. "[T]he proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." *Id.* at 37. Stoddard's counsel conceded at oral argument that she does not allege she was at risk of imminent physical harm. And emotional distress or other "non-physical harm is not the type of 'dangerous condition' that rises to a level so as to invoke the imminent harm to identifiable victim exception." *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 121 (D. Conn. 2019) (collecting cases).

Because the City is entitled to governmental immunity, I will dismiss Stoddard's claims for negligence and negligent infliction of emotional distress against the City of Hartford.

### *Connecticut Constitution*

Finally, the City moves to dismiss Stoddard's claims under the Connecticut Constitution. Although Stoddard filed a response to the motion dismiss, she failed to address any of the Connecticut Constitution arguments raised in the City's motion to dismiss. Therefore, I conclude that Stoddard has abandoned her Connecticut Constitution claims against the City. *See Saez v. Jud. Branch*, 2022 WL 3369737, at *2 (D. Conn. 2022). Accordingly, I will dismiss Stoddard's Connecticut Constitution claims against the City of Hartford.

### CONCLUSION

For the reasons set forth above, the Court GRANTS the City of Hartford's motion to dismiss (Doc. #23). The Clerk of Court shall terminate the City of Hartford from this action, and

this action shall proceed solely as to the individual named defendants.

It is so ordered.

Dated at New Haven this 23rd day of May 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge